# EXHIBIT 1

## CONSULTING AND SERVICES AGREEMENT

This CONSULTING AND SERVICES AGREEMENT (this "Agreement"), is entered as of the 25 day of May, 2011 (the "Effective Date"), by and between TC DECISION SCIENCES, LLC, a Delaware limited liability company ("Company"), SENTINEL RESOURCES, LLC, a Delaware limited liability company ("Consultant") and GREAT PLAINS LENDING, LLC., an entity organized under the laws of, wholly-owned by and an arm of the Otoe-Missouria Tribe of Indians ("Tribal Entity"). Think Finance, Inc., a Delaware corporation, has executed this Agreement solely to guaranty the obligations of Company and its affiliates set forth in all applicable sections of this Agreement.

*Recitals*

A.     Consultant is engaged in the marketing and servicing of certain tribal entities, and the research and development of techniques and business processes related to such businesses and has a long history of providing such services to the Otoe-Missouria Tribe of Indians (collectively, the "Business").

B.     Tribal Entity desires the services of an entity qualified and competent to provide certain administrative and consulting services for the lending operations of Tribal Entity and the loans the Tribal Entity makes, and Consultant has the experience and the access to personnel necessary to provide such services.

C.     Company desires to conduct business with Tribal Entity and Tribal Entity wishes to conduct business with Company related to the consumer loan business initiated by Tribal Entity.

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

*Agreement*

### 1.     SERVICES

1.1     Scope of Services.  Consultant shall provide, from time to time, at the discretion of Tribal Entity, the services set forth on Exhibit A hereto (the "Services") on the terms and conditions hereinafter set forth.

1.2     Independent Contractors.  Consultant, Company and Tribal Entity are not joint venturers, employer/employee, principal/agent or franchiser/franchisee.  Instead, each party is an independent contractor acting for its own account, and no party is authorized to make any commitment or representation, express or implied, on behalf of any other party or to make any other party liable for the debts or obligations of any other party, except as expressly provided herein or specifically authorized by the other in writing.

1.3     Exclusivity.

Initial: KR  (Company)          Initial: ZR (Consultant)       Initial: SJ  (Tribal Entity)

1

(a)     At the Tribal Entity's request and consent, Consultant shall be Company's and Company's affiliates' exclusive provider of guidance and authority in business dealings between Company and Tribal Entity.

(b)     Consultant shall provide the necessary framework and business affiliations for Company and its affiliates to provide marketing and technology services to Tribal Entity in connection with the consumer financial products to be offered by Tribal Entity.

(c)     For the term of this Agreement neither Company nor any of its affiliates will provide any marketing or technology services to any tribal entity located within 100 miles of Ponca City, Oklahoma other than Tribal Entity without the express prior written consent of Tribal Entity and Consultant.

1.4     Subcontractors.  Consultant may subcontract with third parties including, without limitation, its affiliates, to perform all or part of the Services; provided, however, that Consultant shall not be relieved of any obligation under this Agreement as a result of any subcontract entered into pursuant to this Section 1.4 and, for purposes of this Agreement, shall remain responsible for the performance of and Services provided as a result of this Agreement.  Further, Consultant must receive the written consent of Company, which consent shall not be unreasonably withheld, prior to using any subcontractor to provide any Services directly to Company.

1.5     Compliance with Law.  Consultant shall perform the Services in a professional and workmanlike manner and in compliance with all applicable Otoe-Missouria tribal laws and regulations and all applicable U. S. federal, state and local laws and regulations (collectively, "Applicable Law").

1.6     Notice of Certain Events.

Each party shall promptly notify the other parties in writing if it becomes aware of:  (i) any breach of any material agreement or instrument pertaining to any party to this Agreement; (ii) except to the extent limited by any contractual confidentiality obligations, any notice from any applicable governmental authority of any non-compliance or alleged non-compliance by any party with any Applicable Law in connection with or arising out of this Agreement, the Services, the consumer loans to be made by Tribal Entity or any other tribal lending-related activity; or (iii) any pending or threatened litigation or proceedings regarding any party in connection with or arising out of this Agreement, the Services, the consumer loans to be made by Tribal Entity or any other tribal lending-related activity.

1.7     Books and Records.

(a)     Consultant shall keep books and records of the Services provided and reasonable supporting documentation of all charges incurred in connection with providing such Services (collectively, "Books and Records").  Consultant will maintain and retain the Books and Records in a manner consistent the manner in which it maintains its own books and records and with its record retention policies.

(b)     Company, upon reasonable prior written notice to Consultant, shall have the right to inspect and audit, during normal business hours and not to disrupt Consultant's normal business

Initial: ___ (Company)     Initial: ___ (Consultant)     Initial: _T_ (Tribal Entity)

2

GPLV00000750

operations, the Books and Records to the extent reasonably necessary to verify any information regarding the Services with respect to any fiscal year within the twenty-four (24) month period following the end of such fiscal year. Company shall bear all costs and expenses of such an audit. Company shall not have the right to inspect any books or records of Consultant that are not solely related to Company or the Services.

(c)     Consultant, upon reasonable prior written notice to Company, shall have the right to inspect and audit, during normal business hours and not to disrupt Company's normal business operations, the records that directly pertain to the business relationship between Tribal Corp., Consultant and Company to the extent reasonably necessary to verify Company's compliance with this Agreement with respect to any fiscal year within the twenty-four (24) month period following the end of such fiscal year. Consultant shall bear all costs and expenses of such an audit. Consultant shall not have the right to inspect any books or records of Company that are not related to the business relationship between Tribal Corp. and Company, nor shall Consultant have any access to any information related to the proprietary risk scores and underwriting strategies of Company or Tribal Corp.

1.8     Property.

(a)     All property and materials used by Consultant in performing the Services including, without limitation, any software, business processes, trade names, customer lists, contracts, payments records, and any records relating thereto, are and shall remain the sole property of Consultant and neither Company nor Tribal Entity shall have a right to any of them.

(b)     All property and materials used by Company or its affiliates in performing its obligations pursuant to this Agreement or providing services or technology to Tribal Entity or Consultant including, without limitation, any software, business processes, trade names, customer lists, contracts, payments records, and any records relating thereto, are and shall remain the sole property of Company and neither Consultant nor Tribal Entity shall have a right to any of them.

1.9     Disclaimer.   OTHER THAN AS SET FORTH HEREIN, CONSULTANT MAKES NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF PERFORMANCE, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, INFRINGEMENT, OR TITLE, WARRANTIES ARISING BY CUSTOM OR USAGE IN THE PROFESSION, NOR ANY OTHER WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, IN CONNECTION WITH THIS AGREEMENT AND THE SERVICES PROVIDED HEREUNDER.

1.10    Limitation of Liability.   None of the parties shall have any liability to any other party due to the failure of such party to comply with Applicable Law, except for its own gross negligence or intentional or willful misconduct.

## 2.     COMPENSATION

2.1     Consideration for Services.   Consultant will provide services at the request of and be paid entirely by the Tribal Entity.

## 3.     TERM, TERMINATION, DEFAULT

Initial: _KR_ (Company)     Initial: _____ (Consultant)     Initial: _J_ (Tribal Entity)

3

GPLV00000751

3.1     Term and Termination.  This Agreement will commence on the Effective Date and shall continue for a period of five (5) years ("Initial Term"), unless it terminates sooner according to the provisions of this Agreement.  This Agreement will renew automatically for additional terms of one (1) year each unless any Party communicates to the other, in writing, within ninety (90) days of the termination date, that it wishes to terminate this Agreement.  Notwithstanding the foregoing, this Agreement shall automatically terminate upon the termination or expiration of any contractual agreement between Tribal Entity and Company or its affiliates or Tribal Entity and GPL Servicing Ltd., a Cayman Islands company ("GPL").

3.2     Termination with Cause.  In the event of Company's or Consultant's breach of this Agreement including, without limitation, any breach of any representation, warranty or covenant contained herein, the non-breaching party may immediately terminate this Agreement by providing written notice thereof to the breaching party if such breach shall have remained uncured for thirty (30) days after the breaching party's receipt of the written notice of the breach provided, however, that no cure period shall be applicable to any breach of Section 4.5.

3.3     Termination without Cause.

        (a)     Company may terminate this Agreement without cause upon twenty four (24) months prior written notice to the other parties.

        (b)     Consultant or Tribal Entity may terminate this Agreement without cause upon 180 days prior written notice to the other parties.

        (c)     Company or Consultant may terminate this Agreement by giving written notice at least thirty (30) business days in advance of termination if Tribal Entity ceases to fund loans and Tribal Entity does not resume funding within such thirty (30) business day period.

3.4     Surrender.  Upon the termination of this Agreement, each party shall deliver any funds, equipment, supplies, property or other materials belonging to any other party.

3.5     Payment of Expenses After Termination; Accrued Obligations.  No party hereunder shall be relieved from any obligations or liabilities accruing prior to the effective date of termination.

3.6     Survival.  The provisions set forth in Sections 1.7, 1.8, 1.10, 3.4, 3.5 3.6 and Article 4 , shall survive the termination or expiration of this Agreement.

#### 4.     NON-SOLICITATION / CONFIDENTIALITY

4.1     Confidential Information.  The parties agree that all Confidential Information provided pursuant to this Agreement by any party to any other party shall be subject to the terms and conditions of this Agreement.  The party receiving ("Receiving Party") Confidential Information from any other party ("Disclosing Party") shall keep secret and confidential, and not use or disclose (directly or indirectly) to any third party, or assist any third party to use, any of the Disclosing Party's Confidential Information, both during and for a period of five (5) years from the date of termination of this Agreement, except as directly required for Receiving Party to perform its responsibilities to the Disclosing Party hereunder.

Initial: _KR_ (Company)     Initial: _____(Consultant)     Initial: _TJ_ (Tribal Entity)

4

GPLV00000752

4.2     Definition.  "Confidential Information" means any data and other information (whether in human or machine readable form) that comes into Receiving Party's possession or knowledge (before or after the Effective Date), which is obtained from Disclosing Party, or obtained by Receiving Party for or on behalf of Disclosing Party, inadvertently or otherwise, and which pertains to Disclosing Party's business, or any of Disclosing Party's business partners, minority owned subsidiaries or affiliates, and is not generally known in the Disclosing Party's industry.  Confidential Information includes, but is not limited to:  (i) the Disclosing Party's current, future or proposed investments, products or services including, without limitation, engineering, design and technical data, research or development projects, unpublished computer code (both source code and executable code), network configurations, logic diagrams, software designs, algorithms, drawings, specifications, notebook entries, technical notes and graphs; and (ii) the Disclosing Party's business, accounting, marketing, loan servicing and operational methods including, without limitation, business and strategic plans, organizational data, internal financial information, research and development plans and activities, business acquisition and expansion plans, marketing plans, sales data, unpublished promotional materials and proposals, cost and pricing information and policies, customer lists, inventory lists, sources of supplies, supply lists, employee lists, mailing lists, and information concerning relationships between Disclosing Party and its employees or customers.

4.3     Definition Exclusions.  Notwithstanding Section 4.2, the term Confidential Information shall not include any data or other information which:  (i) has been made publicly available or otherwise placed in the public domain other than by Receiving Party in violation of this Agreement; (ii) is already known to Receiving Party or its employees as may be verified by the corporate records of the Receiving Party on the Effective Date; (iii) becomes known to Receiving Party or its employees by disclosure from a third party who has a lawful right to disclose such information; or (iv) is required to be disclosed by operation of law, provided that the Receiving Party provides prior notice of such disclosure to the Disclosing Party unless expressly prohibited from doing so by a court, arbitration panel or other competent legal authority with jurisdiction.

4.4     Acknowledgements.   Each Receiving Party hereby acknowledges that all Confidential Information is considered confidential by, and is exclusively proprietary to and a valuable trade secret of, the Disclosing Party and derives independent economic value, actual or potential, to the Disclosing Party from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.  Further each Receiving Party recognizes that:  (i) the Disclosing Party has spent and spends substantial money, time and effort in developing its Confidential Information; (ii) each Disclosing Party has entered into this Agreement with the understanding and belief that each Receiving Party will preserve the confidentiality of Disclosing Party's Confidential Information; and (iii) each Disclosing Party is hereby agreeing to enter into this Agreement based upon the each Receiving Party's assurances and promises contained herein not to divert the Disclosing Party's business goodwill or to put itself in a position following termination of this Agreement in which the confidentiality of Confidential Information might somehow be compromised.   Receiving Party further acknowledges that all Confidential Information disclosed to Receiving Party is solely for the purpose of enabling Receiving Party to perform its obligations in connection with this Agreement.

4.5     Disclosure of Agreement.  Except in connection with any action to enforce the terms hereof, none of the parties shall disclose the existence of this Agreement or any of the terms and conditions hereof without the prior written consent of the other parties, provided, however, that such prior written consent shall not be required in connection with due diligence activities of a disclosing party

Initial: _KL_ (Company)     Initial: _____ (Consultant)     Initial: _U_ (Tribal Entity)

5

GPLV00000753

so long as the disclosure is made pursuant to a confidentiality agreement consistent with the terms hereof.

4.6     Non-Solicitation.  Company, Tribal Entity, and Consultant each agree that during the term of this Agreement and for a period of one (1) year thereafter, neither Company, Consultant nor Tribal Entity shall, directly or indirectly, on their own behalf or on behalf of any other person or entity, solicit, entice, induce, hire, employ or seek to employ any employee or independent contractor of any other party who was employed or engaged by Company or Company's affiliates, Consultant or Tribal Entity during the term of this Agreement without the prior written consent of the affected party.

## 5.     MISCELLANEOUS

5.1     Addresses and Notices.  Any notice, demand, request, or report required or permitted to be given or made to a party under this Agreement shall be in writing and shall be deemed given or made when delivered in person or when sent by United States registered or certified mail, or by a professional courier service, or by facsimile to the party at such party's address as set forth in this Agreement, regardless of any claim of any Person who may have an interest in this Agreement by reason of an assignment or otherwise.  A party may change its address by written notice to all other parties hereto.  The addresses of the parties are as set forth below:

Consultant:   Sentinel Resources, LLC
              6950 W. 56th St.
              Mission, Kansas  66202

Tribal Entity:   Great Plains Lending, LLC
                 8151 Highway 177
                 Red Rock, OK 74651

                 with a copy (for informational purposes only) to:

                 OMDA
                 423 North Robinson Ave., Suite 500
                 Oklahoma City, OK  73102
                 Facsimile:      (405) 235-4702
                 Attention:      Rebecca Bartlett
                 E-Mail:

Company:      TC Decision Sciences, LLC
              4150 International Plaza, Ste. 400
              Fort Worth, Texas  76109

              with a copy to (which shall not be deemed to be adequate notice):

              Coblentz, Patch, Duffy & Bass LLP
              One Ferry Building, Suite 200
              San Francisco, California  94401
              Attn:  Paul J. Tauber

Initial: _____ (Company)     Initial: _____ (Consultant)     Initial: _____ (Tribal Entity)

6

CONFIDENTIAL

5.2     Titles and Captions.  All article and section titles and captions in this Agreement are for convenience only, shall not be deemed part of this Agreement, and in no way shall define, limit, extend, or describe the scope or intent of any provisions hereof.  Except as specifically provided otherwise, references to "Articles" and "Sections" are to Articles and Sections of this Agreement.

5.3     Pronouns and Plurals.  Whenever the context may require, any pronoun used in this Agreement shall include the corresponding masculine, feminine, or neuter forms, and the singular form of nouns, pronouns, and verbs shall include the plural and vice versa.

5.4     Further Action.  The parties shall execute all documents, provide all information and take or refrain from taking all actions as may be necessary or appropriate to achieve the purposes of this Agreement.

5.5     Waiver.  No failure by any party to insist upon the strict performance of any covenant, duty, agreement, or condition of this Agreement or to exercise any right or remedy consequent upon a breach thereof shall constitute a waiver of any such breach or any other covenant, duty, agreement, or condition.

5.6     Settlement of Disputes.  If any party to this Agreement believes that any other party has failed to comply with any provision of this Agreement, or in the event of any dispute hereunder, including, but not limited to, any dispute over the proper interpretation of the terms and conditions of this Agreement, the following procedures shall be invoked:

        (a)     The goal of the parties shall be to resolve all disputes amicably and voluntarily whenever possible.  A party asserting noncompliance or seeking an interpretation of this Agreement first shall serve written notice on the other parties.  The notice shall identify the specific Agreement provision alleged to have been violated or in dispute and shall specify in detail the asserting party's contention and any factual basis for the claim.  Representatives of the parties shall meet within thirty (30) days of receipt of notice in an effort to resolve the dispute;

        (b)     Any party may refer a dispute arising under this Agreement to arbitration under the rules of the American Arbitration Association ("AAA"), subject to enforcement or pursuant to review as provided in this Section 5.6 by a federal district court.  The remedies available through arbitration are limited to enforcement of the provisions of this Agreement.  The parties consent to the jurisdiction of such arbitration forum and court for such limited purposes and no other, and each waives immunity with respect thereto.  One (1) arbitrator shall be chosen by the parties from a list of qualified arbitrators to be provided by the AAA.  If the parties cannot agree on an arbitrator within ten (10) business days, then the arbitrator shall be named by the AAA.  The expenses of arbitration shall be borne equally by the parties.  The arbitrator shall apply Otoe-Missouria substantive law or, if not applicable, the substantive laws of the State of Oklahoma as well as the Federal Rules of Civil Procedure, provided, however, that if Company and Consultant are the relevant parties to the dispute or failure to comply, then the (a) arbitrator shall apply the substantive laws of the State of Delaware and (b) venue for such arbitration shall be Kansas City, Missouri;

        (c)     A party asserting noncompliance or seeking an interpretation of this Agreement under this Section 5.6 shall be deemed to have certified that to the best of such party's knowledge, information, and belief formed after reasonable inquiry, the claim of noncompliance or the request for interpretation of this Agreement is warranted and made in good faith and not for any improper

Initial: _KR_ (Company)     Initial: _____ (Consultant)     Initial: _JJ_ (Tribal Entity)

7

CONFIDENTIAL

purpose, such as to harass or to cause unnecessary delay or the needless incurring of the cost of resolving the dispute. If the dispute is found to have been initiated in violation of this Section 5.7(c), then the Arbitrator, upon request or upon his or her own initiative, may impose upon the violating party an appropriate sanction, which may include an award to the other party(ies) of its reasonable expenses incurred in having to participate in the arbitration;

(d)     Any party to the Agreement may bring an action in a federal district court for the de novo review of any arbitration award under Section 5.6(b). The decision of the court shall be subject to appeal. Each party hereby waives any claim of immunity and consents to suit therein for such limited purposes. The parties hereby acknowledge that this express waiver extends only to actions brought by Company and/or Consultant, each of their respective successors and assigns (and not any other party) against Tribal Entity for claims of any kind arising under this Agreement.

(e)     Nothing herein shall be construed to authorize a money judgment other than for damages for failure to comply with an arbitration decision requiring the payment of monies; and

(f)     The parties acknowledge and agree that damages will not be an adequate remedy in the event of a breach or threatened breach of Sections 1.3, 3.1, 3.5 or 3.6. Accordingly, each party agrees that the other party(ies) shall be entitled (without limitation of any other rights or remedies otherwise available to such other party(ies) and without the necessity of posting a bond or other security) to obtain an injunction from any court of competent jurisdiction prohibiting the occurrence, continuance or recurrence of any such breach.

(g)     Limited Waiver of Tribal Sovereign Immunity. Tribal Corp. irrevocably (i) waives any sovereign immunity and any other privilege that may be asserted from its status as an instrumentality or entity of the Otoe-Missouria Tribe of Indians and any defenses associated with such immunity or privilege from unconsented suit, and (ii) consents to any legal proceedings or alternative dispute resolution pursuant to this Agreement and the enforcement and collection of judgment or award, injunction, specific performance or declaratory relief, conditioned only upon following limitations: (a) this waiver is limited to the tribal entity, GP Lending, and does not extend to an action against the tribal government of the Otoe-Missouria Tribe of Indians, and shall not be deemed a waiver of the rights, privileges and immunities of the tribal government of the Otoe-Missouria Tribe of Indians, and (b) the waiver is limited to actions to (i) interpret or enforce the provisions of this Agreement, and (ii) enforce any agreement, order, judgment or ruling resulting from such an action including, but not limited to, any execution and collection of monetary damages.

5.7     Counterparts; Signatures. This Agreement may be executed in counterparts, all of which together shall constitute one agreement binding on all parties hereto, notwithstanding that all such parties are not signatories to the original or the same counterpart. Signatures received by facsimile, PDF file or other electronic format shall be deemed to be original signatures.

5.8     Invalidity of Provisions. If any provision of this Agreement is declared or found to be illegal, unenforceable, or void, in whole or in part, then the parties shall be relieved of all obligations arising under such provision, but only to the extent that it is illegal, unenforceable, or void, it being the intent and agreement of the parties that this Agreement shall be deemed amended by modifying such provision to the extent necessary to make it legal and enforceable while preserving its intent, or, if that is not possible, by substituting therefor another provision that is legal and enforceable and achieves the same objectives.

Initial: _KR_ (Company)        Initial: _AG_ (Consultant)        Initial: _TJ_ (Tribal Entity)

8

CONFIDENTIAL

5.9     Assignment. No party may assign its rights or obligations under this Agreement without the prior written consent of the other parties provided, however, that such prior written consent shall not be required in connection with the sale of all or substantially all of the assets or equity securities of the assigning party.  Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors, legal representatives, and permitted assigns.

[signature page follows]

Initial: _KK_ (Company)        Initial: _KG_ (Consultant)     Initial: _TJ_ (Tribal Entity)

9

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed on the day and year first above written.

**TRIBAL ENTITY:**

GREAT PLAINS LENDING, LLC
an Otoe-Missouria Tribal entity

By: _____
Name: John R. Shotton
Title: Chairman
Date: 5-25-11

**CONSULTANT:**

SENTINEL RESOURCES, LLC,
a Delaware limited liability company

By: _____
Name: Brian C. F. Co
Title: V.P.
Date: 5/26/11

**COMPANY:**

TC DECISION SCIENCES, LLC,
a Delaware limited liability company

By: _____
Name: Kenneth E. Rees
Title: CEO
Date: 5/25/11

Initial: KR (Company)   Initial: (Consultant)   Initial: TJ (Tribal Entity)

10

CONFIDENTIAL

*The undersigned hereby guaranties the performance of the obligations of Company and its affiliates as set forth in all applicable sections.*

**COMPANY:**

THINK FINANCE, INC.,
a Delaware corporation

By: _____

Name: _Kennth E Rees_

Title: _CEO_

Date: _5/25/11_

[Remainder of Page Left Blank]

Initial _KR_ (Company)    Initial _____ (Consultant)    Initial _T_ (Tribal Entity)

11

GPLV00000759

## EXHIBIT A

## THE SERVICES

Pursuant to the terms of this Agreement (as may be amended form time to time), Consultant shall perform the following Services:

| Services | Description |
|---|---|
| **Communication with the Tribal Entity Owners:** | Consultant will be responsible for communications with any equity owners of Tribal Entity. This will include, but shall not be limited to, communication with the Otoe-Missouria Chairman on all matters pertinent to the business relationship between Company and the Tribal Entity. In order to insure coordination of activities, Company will direct communications with the Tribal government through Consultant unless Consultant directs otherwise in writing or Consultant is a party to the communication. For purposes of clarification, the foregoing shall not prohibit communications between Company and executives or other personnel of Tribal Entity on matters related to, among other things, the provision of services and/or technology by Company or any of its affiliates to Tribal Entity<br><br>Consultant will schedule a program review meeting with equity owners of Tribal Corp. and Company at least once each quarter to discuss performance and the regulatory environment. |
| **Review of Operational Changes** | If Company desires to change or modify the structure or operating policies of Tribal Entity, then Company shall first review any changes with Consultant and receive specific written permission from Consultant to make such alterations or modifications.<br>Tribal Entity will respond to requests for changes to operating policies from Company within 2 business days. |
| **New and Modified Loan Products and Programs** | Consultant will initially review and provide guidance to Tribal Entity for any proposal by Company for a new and/or modified loan product or program prior to submission to Tribal Entity This does not apply to any risk management strategies that Company or its |

CONFIDENTIAL

GPLV00000760

| Services | Description |
|---|---|
| | affiliates may recommend to Tribal Entity<br>Tribal Entity will respond to requests for changes to loan products or programs from Company within 5 business days. |
| New Tribal Entities | Consultant will initially review and approve any proposal for a new Tribal Entity entity prior to submission to the Tribal Entity |
| Legal Contact | Any initial legal contact by Company that has to do with Tribal Entity business with Company shall be reviewed by Consultant by Consultant's legal representative. |
| External Public Communications | Company shall provide to Consultant any public communication that will use Tribal Entity's name or tribal identifying information. Consultant will give prompt final approval for release of the public communication. Public communication shall include, but not limited to, any website, media/press release or marketing material of any kind or appearance. |
| Accounting | Consultant shall provide accounting services to Tribal Entity |
| Dedicated Staff | Tribal Entity shall hire at least one (1) dedicated employee to work with Company and/or Company's affiliates related to operational and marketing functions. |

[Remainder of Page Left Blank]

CONFIDENTIAL